2020 IL App (2d) 170826-U
No. 2-17-0826
Order filed April 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-1251 |
| DAVID Z. TEICHROEW, | ) ) ) | Honorable Mark L. Levitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion when it barred defendant's expert from testifying in support of its entrapment defense on relevancy grounds after defendant had promised the jury in its opening statement that it would hear the expert testimony. Nor did trial the court abuse its discretion when it denied defendant's motion for a mistrial even though the decision to bar the expert's testimony was in part premised upon the court's mid-trial reconsideration of the expert's qualifications. Trial court had admonished defendant both at an *in limine* hearing and before opening statements that its entrapment defense evidence was subject to relevancy findings and should probably be avoided in opening statement and, quite apart from the expert qualification issue, the court's relevancy ruling otherwise barring the expert's opinion was not an abuse of discretion.

¶ 2    Following a jury trial, defendant, David Teichroew, was convicted on three counts of indecent solicitation of a child involving the sexual penetration of someone older than 13 but younger than 17 years of age. 720 ILCS 5/11-6(a) (West Supp. 2013). He was subsequently sentenced to 30 months' probation and 18 months periodic imprisonment. On appeal, defendant contends that the trial court abused its discretion when it denied his motion for a mistrial. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The record reflects that in April 2013 defendant, a 39 year-old male, posted an advertisement on the "casual encounters" section of Craigslist. Defendant advertised he was looking for a "young, hot stud-M4M" and it contained a picture of a penis. On May 1, 2013, Detective Christopher Covelli of the Lake County sheriff's department was searching on Craigslist for possible sexual offenses against children. In searching the Casual Encounters page, Covelli observed that defendant's advertisement was looking to meet somebody "young," under the age of 25 for a sexual relationship, so he responded in an undercover capacity using an undercover email.

¶ 5    Covelli emailed defendant that although he was interested, he was only 14 years old and could not drive. Defendant told Covelli to send him a picture of himself and a location where they could meet, and that they could "go from there." Defendant and Covelli exchanged additional emails, including one where defendant referred to the explicit sex acts he wanted to perform on Covelli. Rather than discontinue any interaction when Covelli indicated he was 14 years old, defendant said he might be too old for Covelli, and claimed to be 29, some 10 years younger than his real age. Eventually, defendant and Covelli agreed to meet. Covelli arrested defendant when he showed up at the agreed location for the meeting.

¶ 6     During a subsequent interview at the sheriff's department, defendant acknowledged that Covelli's initial undercover message indicated that the sender was 14 years old. However, defendant suggested that the number 14 could have been a typographical error. Defendant denied having any intention to have sex with a minor and claimed he would not have gone to the agreed location if he had known with certainty he was going to meet with a 14-year-old boy.

¶ 7                              A.  Pretrial Proceedings

¶ 8     On May 29, 2013, defendant was indicted on three counts of indecent solicitation of a child. 720 ILCS 5/11-6(a) (West Supp. 2013). Specifically, the State alleged that defendant, who was 17 years of age or older, solicited a person he believed to be under 17 years of age but older than 13 years of age to: (1) receive fellatio; (2) fellate the defendant; and (3) have defendant's mouth placed on the child's anus.  Defendant subsequently entered pleas of not guilty and further indicated that he would be asserting the affirmative defense of entrapment. In a later disclosure, defendant notified the State that the defense intended to call Evaristo Ruiz, a sex offender evaluator and treatment provider, as an expert witness on the issue whether defendant was predisposed to commit the offenses for which he was charged.

¶ 9     On August 23, 2017, the State moved *in limine* to bar defendant from asserting an entrapment defense. In the motion the State claimed that the facts were clear that defendant had not been induced or encouraged to commit the offenses. Regarding Ruiz's expert testimony, the State contended that entrapment was an affirmative legal defense and a mental health professional could not testify as to defendant's state of mind and motivation in communicating with and traveling to meet the victim.

¶ 10    At an initial argument on the State's motion *in limine,* defense counsel told the court that Ruiz would testify that defendant did not have any sexual interest in minors. He said that Ruiz had

performed sexual offender analyses for several years and that he was an expert in that field. Counsel said that defendant had taken and passed a polygraph examination that he had never been attracted to minors and that he had no previous sexual contact with minors. Defense counsel acknowledged that polygraph results were inadmissible on the ultimate issue in a case; however, he contended that such test results are regularly relied upon by sex offender evaluators and could be relied upon in formulating an opinion in this case. Defense counsel further observed that the police had conducted a forensic analysis of defendant's computer and found no traces of child pornography. Accordingly, Defense counsel urged that Ruiz's testimony, the polygraph results, and defendant's child-pornography-free laptop should be considered admissible reputation evidence in support of defendant's entrapment defense.

¶ 11 The court informed defense counsel that if he wanted to proceed with this evidence without first proffering testimony from Ruiz at an *in limine* hearing, it would order counsel to avoid referring to the evidence in his opening statement, and that the evidence would be subject to contemporaneous objections at trial. The court suggested instead that it would be more prudent for counsel to have a pretrial hearing on Ruiz's prospective testimony so the court could determine whether it would be allowed.

¶ 12 The defense agreed and a pretrial hearing on Ruiz's testimony was held on August 27, 2017. In order to expedite the hearing, the court asked the parties whether they were prepared to stipulate to Ruiz's expertise *in the field of forensic psychology* for purpose of the pretrial hearing only. The parties so stipulated.

¶ 13 Ruiz testified that he had provided evaluations and treatment for thousands of sexual offenders since 1989. Ruiz had a master's degree from the University of Chicago School of Social Service Administration, and he was licensed as a clinical social worker. He had met with defendant

to determine if he had committed a sexual offense and to provide sex-offender treatment if defendant was deemed treatable. The meeting was not to determine whether defendant had an interest in minors.

¶ 14    Ruiz asked defendant whether he had an interest in prepubescent children and he denied any interest. That self-report, the nature of the offenses and the activities that defendant told Ruiz that he was engaged in before he was charged with these crimes, indicated to Ruiz that defendant had no interest in prepubescent children. Ruiz had also reviewed the results of the polygraph test that defendant had taken. Those results indicated that defendant had never fantasized about or engaged in sexual conduct with minors.

¶ 15    Ruiz met with defendant in June 2013 and in April 2017 to conduct clinical interviews. Defendant's April 2017 risk assessment revealed that he was still subject to several risk factors that were present in his 2013 assessment. Ruiz had received a report from a forensic expert that indicated no child pornography was found on defendant's computer. Ruiz told defense counsel earlier that he did not believe defendant had an interest in minors because defendant had reported to him that all his past sexual partners were adult males, he posted his solicitation on an adult site and the title of his solicitation clearly said that he was looking for a young *adult* male.  On cross-examination, however, Ruiz clarified that when he told defense counsel that defendant did not have any sexual interest in minors, he meant that defendant did not have any interest in prepubescent minors, and that he was not referring to children between the ages of 14 and 17.

¶ 16    At the end of the hearing the trial court denied the State's motion *in limine* to bar defendant from asserting an entrapment defense. Regarding Ruiz, the court said it would not bar the defendant from calling him, but cautioned defense counsel that it would rule on objections as to the relevance of Ruiz's testimony in front of the jury.  The court pointed out several potential

issues with Ruiz's testimony, including that the issue in this case was not whether defendant was guilty of soliciting a prepubescent child, but rather whether defendant was guilty of soliciting an adolescent under the age of 17.

On the very next day, after the jury was selected, the court addressed additional motions *in limine*. During that hearing the court said to the defense attorney: "And I will—as long as we're on the subject of Mr. Ruiz, I'll remind the parties—and I want to make sure that you discuss this with [defendant]—my ruling yesterday in denying the state's motion to bar your affirmative defense of entrapment is not in any way to say that you might not receive negative rulings on objections and motions. So if you open with it, I'm not going to tell you what to do or how to conduct your case obviously, but be aware that, if you open with it and don't get it you do that at your peril. So, I want to make sure that you have discussed it with [defendant]." Counsel indicated that he had thoroughly discussed that matter with defendant.

¶ 17                                    B.  Trial

¶ 18     In his opening statement counsel told the jury that it would "hear from an expert in this case that [defendant] [had] never in his life had a sexual interest in children." The State objected, and the parties were called to approach the bench. The following colloquy then took place:

> "THE COURT:  I cautioned the parties. I told the defense that if they did that and it was not admitted, for whatever reason, that he did that at his peril. He's obviously elected to proceed, so I'm going to let him do it.
>
> MR. PAPPAS [(ASSISTANT STATE'S ATTORNEY)]:    And—but beyond that, your Honor, beyond the initial admonition, the other thing is that I believe that this is not his testimony.  That was not the expert's—
>
> THE COURT:  Well, I don't know.

MR. PAPPAS: —testimony.

THE COURT: I mean, he may—I don't know what he's going to testify to, what other witnesses [defense counsel] may have at this point. All I can rely on is his duty as an officer of the court to not make statements that are not appropriate in opening, so the objection is overruled."

¶ 19 Defense counsel continued his opening statement and reiterated that the jury would hear from an expert that defendant never had any sexual interest in children. He told them that defendant had passed a polygraph test about whether he had fantasies of children, and that defendant had nothing in his background that would indicate any sexual interest in children. Finally, counsel told the jury it would hear evidence that defendant willingly consented to the search of his computer and that the "psychological expert" relied upon the results of that forensic examination.

¶ 20 The State's first witness, Sergeant Christopher Covelli of the Lake County sheriff's office, testified that at the time of the offense he was a detective in the Internet Crimes Against Children section of the sheriff's office. Covelli had been taught to conduct proactive investigations where an investigator would go online and look for individuals who were using the internet to engage in either the sharing or downloading of child pornography or communication with children for sexual reasons.

¶ 21 On May 1, 2013, Covelli had been searching the "casual encounters" section on Craig's List when he saw an advertisement for a "Young, Hot Stud Wanted-M4M." When he clicked on the advertisement there was a picture of a nude male sitting down. Covelli replied to him using his undercover name, Jim Martin. Covelli wrote, "[h]ey, you seem cool, but I'm only 14 and I can't drive," followed by an unhappy emoji. Defendant replied to the email, "[s]end me a pic and

location, and we can go from there." Covelli responded, "I'm from Grayslake, kind of by Great America, but I don't like to send pics bc too many people at my school have gotten into big trouble doing that." Defendant responded, "[w]ell, I can come and get you, but I won't come unless I see a pic of you, and you tell me what you are looking for." Covelli replied, "I don't know . . . I have never done this b4 and am kinda scared. I don't want to end up in a ditch somewhere lol." Defendant said, "[w]ell I understand that; all I can tell you is that I won't leave you in a ditch."

¶ 22 Covelli described "Jim's" physical appearance to defendant and gave him his created email address and defendant gave Covelli his email address, which contained his name. Defendant sent Covelli a picture of his face and said he was a 36 year-old bisexual male looking to "host" in Wheeling. He was 6 feet, 295 pounds with brown hair, brown/green eyes and had a "seven-inch cut cock." Additional emails were exchanged and then Covelli emailed defendant and said, "it just feels kinda weird." Defendant said, "I understand. I don't want to push But you must be curious? Tell me what you are curious about." Covelli replied, "lol, I think you know!" and defendant replied, "I have an idea, but I would like to know what you had in mind."

¶ 23 Covelli told defendant that he guessed he was up for anything, and defendant said that he was not into anything too wild and said that he would love to get together with Covelli and play. He asked for a picture of Covelli. Covelli replied, "[c]ool, thanks. U seem like I could trust u. I like that ur not 2 pushy!" In reply defendant said, "[w]henever you are ready I am ready" and "[j]ust let me know where you want to be picked up and what you want to try." After several more emails defendant said, "[y]eah just let me know. I can't wait to go down on you and swallow your load," "I am hoping you want to suck me," and "I would also love to rim your tight hole and anything else you might want." Defendant again emailed that he would like to see a picture of Covelli's face and body.

¶ 24    On May 4, 2013, defendant emailed Covelli and said, "I hope you haven't forgotten me." Covelli did not reply until May 6, 2013, when he said, "[h]ey!!  Not at all lol!  I was hoping the same about u 2!"  When he did not receive a response for a few hours Covelli emailed again and he said, "Did you forget about me?"  Defendant responded the next day and said, "[n]o, I am still here, hoping to see some pics and get together with you."  Covelli then sent defendant a picture of a clothed 18-year-old man.

¶ 25    After defendant received the photo he replied, "[y]ou are cute, damn cute" and wrote about having oral sex with Covelli.  Covelli did not respond to that email, though they continued to exchange messages.  A few days later defendant told Covelli that he had the next day off work and asked him if he wanted to meet.  Covelli said, "[y]ea that's cool but I don't get home from school till like 345 tomorrow."  Defendant replied, "I am fine with that unless you want to play sick and and [*sic*] I can come get you earlier, up to you."  Covelli declined to "play sick" and asked defendant to promise to be nice to him.  Defendant replied, [y]es, I will be nice to you.  I will suck you, rim you, and swallow you.  We [sic] make out, cuddle, or not, whatever you want."

¶ 26    Covelli and defendant arranged to meet at 33535 Royal Oak Lane in Grayslake.  Defendant told Covelli he would be driving a black Plymouth.  The parties exchanged numbers and defendant told Covelli that his name was Zac.

¶ 27    On May 9, 2013, Covelli and other investigators established surveillance near Royal Oak Lane in unmarked vehicles.  Covelli saw a black Plymouth drive up the cul-de-sac and park.  The man driving the car looked very similar to the person in the picture that defendant sent to him. Covelli texted defendant and told him that he would be arriving shortly.  Covelli approached the Plymouth and asked the driver why he was parked at that location.  Defendant said that he was there to see an 18-year-old friend named Jimmy.  Covelli then placed defendant under arrest.

¶ 28    After waiving his *Miranda* rights defendant consented to an audio-recorded interview. There he told investigators that he thought it was possible that Covelli's initial email indicating that he was 14 years old was a "typo" and that you could not rely on someone typing that they were younger than their actual age. Defendant acknowledged that he had planned to "hook up" with someone named Jim, and they were going to go back to defendant's place. He acknowledged sending the emails that Covelli received, and he consented to a search of his computer, cell phone and residence.

¶ 29    On cross-examination Covelli conceded he had no information about defendant prior to this incident. He acknowledged that in response to one of defendant's emails he replied, "[h]ey, I'm up for anything." However, he denied that when he responded, "I think you know," he was referring to sex. Instead, the language in his emails left things open-ended. The State rested after Covelli's testimony and defense counsel moved for a directed verdict, which was denied.

¶ 30    Defense counsel informed the court that it would call Ruiz as its first witness and suggested revisiting his testimony again outside the presence of the jury. The State argued that there were several problems with Ruiz's testimony, the biggest being that his testimony was irrelevant. Specifically, the State noted that at the hearing on the State's motion *in limine*, Ruiz testified that his opinion that defendant was not interested in minors was limited to prepubescent children, an issue that was not present in this case. The court said that it would not let Ruiz testify about anything irrelevant, and asked defense counsel what Ruiz was planning to testify about. Counsel said that he was going to present evidence that Ruiz had relied on defendant's polygraph report, where the examiner concluded that defendant had no interest in minors. The court asked him how he would lay a foundation for the polygraph results. In response, counsel said that Ruiz was qualified to testify as an expert because he had evaluated hundreds, if not thousands, of people.

The court again asked counsel how he would lay a foundation for the polygraph exam results and the following colloquy occurred:

"MR. RINEHART [(DEFENSE COUNSEL)]: Ruiz is going to testify that [defendant] doesn't have a sexual interest in minors. The basis of that opinion will be two clinical interviews and the polygraph report.

THE COURT: Okay. You say the word "polygraph," [the State] objects; now what?

MR. RINEHART: Well—

THE COURT: Why do you get to ask questions in front of the jury? What relevance—first of all, polygraph has a connotation to it that it's somehow some type of scientific, reliable information that Mr. Ruiz used. You don't have the polygraph examiner. You have not had a hearing as to whether or not it would be admissible. You are going to ask to put in front of a jury evidence that he passed a test that says he's not interested in minor children, and I say to you, two things: one, how do you propose to do that and lay a foundation for it, and, two, how is it relevant

MR. RINEHART: Okay. So, the foundation for it will be that it is a thing relied upon by sex offender evaluators.

THE COURT: Who authored it?

MR. RINEHRT: Dr. Robert Berg.

THE COURT: Okay. And who's Robert Berg?

MR. RINEHART: He's a certified polygraph examiner—

THE COURT: Known to who—

MR. RINEHART:  It is relied upon by Dr. Ruiz—excuse me—Mr. Ruiz in this case.

THE COURT:  And Mr. Ruiz hired Mr. Berg?  Mr. Ruiz examined his qualifications?  Mr. Ruiz—who's Berg?

MR. RINEHART: Judge, this sounds like—okay.  This sounds like areas for cross-examination—

THE COURT:  No.

MR. RINEHART: —of Ruiz.

THE COURT:  No. It is areas (*sic*) for deciding what the jury gets to hear and not hear.  You asked to flesh this out—

MR RINEHART:  I did.

THE COURT:  —and I guess it's better that you do it outside the presence of the jury because I don't see where you're going with this.  And I guess you're right.  If you put this out there in front of the jury and you were shut down, I guess that would not be very good."

¶ 31    The court told defense counsel to call Ruiz, but counsel sought to clarify that polygraphs were admissible, at least "in every [Sexually Dangerous Person] and [Sexually Violent Person] case [he'd] ever worked."  The State said it would object if Ruiz attempted to testify about defendant's polygraph results.  The court said that if counsel could not lay a foundation, then it was not relevant.  Counsel argued that the polygraph results should be admissible because he had watched his clients be confined to lifetime sentences based experts' reviews of documentary evidence alone.

¶ 32    The court explained to counsel that his client was not charged with solicitation of a prepubescent minor, to which counsel replied that that issue was for the jury to decide. The court disagreed and noted that Ruiz only testified that defendant showed no interest in prepubescent children. Counsel disputed that that was the entirety of Ruiz's testimony. The court told counsel to call his witness.

¶ 33    The State then moved to bar defense counsel from mentioning the polygraph results. Counsel argued that it would be inequitable to allow polygraph evidence in sexually dangerous and sexually violent persons' cases and not in this case. The court granted the State's motion after ruling that the risk to confuse the jury would be too great where counsel sought to introduce evidence of a polygraph by an unknown polygraph examiner since there was no indication that the evidence was relevant or reliable.

¶ 34    The State then argued that Ruiz was not qualified to render an opinion about defendant's sexual interest in minors because he was a licensed clinical social worker and not a psychologist. The court said that it thought the parties had agreed that Ruiz was an expert in forensic psychology. Though the parties had so stipulated at the court's suggestion during the *in limine* hearing, they agreed that this was not actually the case. The court then stated that if Ruiz was only qualified to testify as a social worker, it would not allow him to testify about defendant's predisposition to commit sex offenses.

¶ 35    Defense counsel argued that Ruiz should be allowed to testify because he was an "SOMB-approved" sex offender evaluator, but further urged that if the court declined to allow Ruiz to testify on the ground that he was not an expert in forensic psychology, the court should declare a mistrial. The court reminded counsel that it had warned him about his defense earlier when he told him he would open with an entrapment defense at his own peril. The court further remarked,

"I said repeatedly that, given that and given my early remarks about the nature of the testimony of a person that I believed at the time was an expert in the field of clinical psychology, should have given you pause—enough pause to know that that would be something that you might not want to open with."

¶ 36    The court then barred defendant from calling Ruiz because it deemed Ruiz's testimony to be irrelevant, and his education to be insufficient to render the opinion that the defense proffered.

¶ 37    Defense counsel moved for a mistrial, arguing that the court's mid-trial decision to bar Ruiz's testimony resulted in defense counsel having made a promise to the jury in terms of expert testimony that it could no longer fulfil, to the great detriment of the defendant.  In denying the motion for a mistrial, the court noted that it had warned the defendant about mentioning the entrapment defense in his opening statement, and further that defendant was aware that Ruiz's testimony was subject to a relevancy objection.  The court did, however, take responsibility for the mistake as to Ruiz's qualifications made during the motion *in limine* hearing.  It noted that in order to expedite the hearing, the court asked if the parties were willing to stipulate that Ruiz was an expert in the field of forensic psychology, to which they agreed; indeed, the court suggested that the parties were not paying complete attention when it solicited the qualification stipulation.  Given this, and the concern about the promises defense counsel had made in his opening statement, the court prohibited the State from commenting in any way about defense counsel's unfulfilled promise in opening statement to introduce evidence from an expert on the question of defendant's sexual interest in children.  The court warned it would revisit the motion for a mistrial if the State violated that order.

¶ 38    The defense then began its case-in-chief.  Defendant testified that he created an advertisement on Craigslist in April 2013.  His target audience was anyone between the ages of 18

and 25, and Craigslist had prompts that required users to affirm that they were 18 or older before accessing the "casual encounters" subsection. He admitted receiving Covelli's email on May 1, 2013, and that the sender indicated he was 14 years' old and could not drive. He said he responded to the email because he was excited by the fact that someone was interested in him. He made a mistake and he knew the sender was 14 years old. His goal in emailing the sender was to have a sexual encounter with him. He was ashamed to admit that, and he reiterated that he was excited that someone was interested in him.

¶ 39     Defendant believed the sender was underage not only based on the initial email where he said he was 14 years old, but also because he talked about his mother, school and friends in his emails. He understood the references in Covelli's emails that "he was up for anything" and "what they wanted was embarrassing" as referring to sex.

¶ 40     On cross examination, defendant admitted that he knew that Craigslist did not allow him to seek out anyone under the age of 18 years. He knew that Craigslist's rules requested that users report the exploitation of minors on its site to the appropriate authorities; however, he did not report "Jim" because he was excited that someone was showing an interest in him.

¶ 41     After defendant had finished testifying, defense counsel renewed his request, based upon the State's cross-examination, to call Ruiz to testify. The trial court denied the request. The defense then rested, and the court excused the jury briefly. The court and the parties held an informal jury instruction conference at which time the parties agreed to all of the instructions, except defendant's request for a jury instruction on entrapment, to which the State objected. The court overruled the objection indicating that the emails and defendant's testimony was "some evidence" that merited the giving of an entrapment instruction.

¶ 42   After going through the remaining jury instructions counsel renewed his motion for a directed verdict and argued that defendant was entrapped as a matter of law.  The court denied the motion.  After deliberations, the jury returned guilty verdicts on all three counts of indecent solicitation of a child.  720 ILCS 5/11-6(a) (West 2012).

¶ 43   Counsel filed a motion for a new trial or a judgment notwithstanding the verdict.  In the motion, counsel alleged that the trial court abused its discretion by excluding Ruiz's testimony and by denying defense counsel's subsequent motion for a mistrial given defense counsel's promises about Ruiz's testimony in his opening statement.  After the court denied the motion, defendant timely appealed.

¶ 44                                    II. ANALYSIS

¶ 45   On appeal defendant argues that the trial court abused its discretion when it prohibited Ruiz from testifying at trial notwithstanding its pretrial ruling to the contrary, and further when it then denied defendant's request for a mistrial given defense counsel's promise to the jury in opening statement that it would hear from Ruiz.

¶ 46   A trial court's evidentiary rulings are reviewed for abuse of discretion where the defendant asserts that the trial court's improper rulings denied him his constitutional right to present a complete defense.  *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 133. Likewise, where a substantive error has occurred and a party moves for a mistrial, the trial court's denial of a motion for a mistrial is also reviewed for abuse of discretion.  *People v. Nelson*, 235 Ill. 2d 386, 435 (2009); *People v. Sheley*, 2017 IL App (3d) 140659, ¶ 15.  Abuse of discretion means that the trial court's decision was "clearly against logic."  *People v. Covington*, 395 Ill. App. 3d 996, 1002 (2009). A trial court's decision is against logic when it is "arbitrary, fanciful, or unreasonable, or

where no reasonable person would take the view adopted by the trial court." *People v. Peterson, 2017* IL 120331, ¶ 125; *People v. Gregory*, 2016 IL App (2d) 140294, ¶ 24.

¶ 47   A mistrial should be granted where an error of such gravity has occurred that the defendant has been denied fundamental fairness and the continuation of the proceedings would defeat the ends of justice. *People v. Nelson*, 235 Ill. 2d 386, 435 (2009).  A mistrial is warranted where the error so influences and prejudices the jury that it cannot be fair and impartial, and the damage cannot be cured by admonitions and instructions. *People v. Middleton*, 2018 IL App (1st) 152040, ¶ 29.

¶ 48   Initially we must determine whether the trial court erred in barring Ruiz's testimony at trial; for if this ruling was not an abuse of discretion, defendant's mistrial argument necessarily fails.  Prior to trial, the State moved *in limine* to bar defendant's entrapment defense.  In a hearing on that issue, the parties stipulated to Ruiz's qualifications to render expert opinions in forensic psychology and Ruiz then testified as to his opinion and the basis thereof.  At the conclusion of the hearing, the court denied the State's motion *in limine*  to bar the entrapment defense and further indicated the defense could call Ruiz at trial, though the court noted that Ruiz's opinion that defendant had no interest in prepubescent minors was not relevant to the indecent solicitation charges at issue, which alleged the solicitation of a post-pubescent minor.  Though the court ruled it would not bar the entrapment defense or Ruiz's testimony *in limine,* it cautioned that any evidence in support of the entrapment defense, including that of Ruiz, would be subject to contemporaneous relevance objections at trial.  Indeed, the court went so far as to "caution the parties from calling him."

¶ 49   Prior to opening statements the next day, the court again admonished defense counsel that its earlier ruling "in denying the State's motion to bar your affirmative defense of entrapment is

not in any way to say you will not receive negative rulings on objections and motions. So, if you open with it . . . and you don't get it, you do that at your peril." Notwithstanding these repeated admonitions, defense counsel specifically told the jurors in opening statement that they would hear from an expert who would opine defendant did not have an interest in minors. The court denied the State's objection, noting at a side bar that, "I told the defense that if they did that and it was later not admitted, for whatever reason, that he did that at his peril. He's obviously elected to proceed, so I'm going to let him do it."

¶ 50    At the conclusion of the State's case in chief, defense counsel requested that the court revisit the relevancy of Ruiz's testimony outside the presence of the jury. During the course of that argument, the court learned that Ruiz was not a psychologist, but rather a licensed clinical social worker with a background in working with sex offenders. The trial court barred defendant from calling Ruiz on two bases, first that he was unqualified to render the proffered opinion, and second that Ruiz's opinion that defendant did not have a sexual interest in minors was irrelevant because, by "minor", Ruiz meant prepubescent children, and the solicitation charges related to post-pubescent minors. The court further ruled that Ruiz could not testify to the polygraph results showing that defendant did not have a sexual interest in minor children on foundation grounds. The court then denied defendant's motion for a mistrial, though it ordered, *sua sponte,* that the State's closing arguments in no way reference defense counsel's opening statements as it related to the subject of Ruiz's testimony under pain of revisiting the motion for a mistrial.

¶ 51    Initially we note that defendant's contention on appeal that the trial court erred because it ruled Ruiz could testify pretrial and then changed its decision midtrial misapprehends the court's pretrial ruling. While the court declined to grant the State's motion *in limine* to bar the entrapment defense and Ruiz's testimony, it made very clear that any evidence related to the defense, including

the testimony of Ruiz, would be subject to relevancy objections at trial. Turning to whether the trial court abused its discretion in barring Ruiz's testimony, we can affirm this decision on any basis contained in the record and need not rely on the reasoning of the trial court. *People v. Sardin*, 2019 IL App (1st) 170544, ¶ 110. While it is arguable whether Ruiz's lack of a psychology degree alone disqualified him as an expert in light of his other professional degrees and sex offender evaluation and treatment background, we do not reach the issue of Ruiz's qualifications since we find that Ruiz's proffered opinion is unquestionably irrelevant.

¶ 52    In the pretrial motion *in limine* hearing, Ruiz opined that defendant did not have a sexual interest in minors. On cross-examination, however, Ruiz clarified more than once that by "minor" he meant prepubescent children, i.e., children under 13 years of age. When the relevance of Ruiz's testimony was revisited at the close of the State's case-in-chief, defense counsel proffered that Ruiz would testify that defendant did not have a sexual interest in minors, but did not proffer that Ruiz's definition of minor in this regard had changed from the previous day's motion *in limine* hearing. That being the case, we conclude that the trial court did not abuse its discretion in disallowing Ruiz's testimony; simply put, Ruiz's opinion that defendant did not have a sexual interest in prepubescent minors was irrelevant to the question whether defendant was predisposed to solicit sex from minors between the ages of 13-17.

¶ 53    In light of the above, defendant's contention that the trial court abused its discretion in denying its motion for a mistrial fails. While the trial court concluded that it erred in finding defendant qualified to render an opinion in forensic psychology such that some corrective action was required in light of its subsequent decision to disallow the testimony, this was by no means the sole basis for the court's decision to disallow Ruiz's testimony. As indicated above, we believe the court did not abuse its discretion in otherwise disallowing the testimony on relevance grounds.

Further, as the court made clear both in ruling on the motion *in* limine, and again before opening statements, the evidence in support of defendant's entrapment defense, including the testimony of Ruiz, was subject to relevance objections that might make it inadmissible. So while the trial court was free to order the State not to mention the unfulfilled promise of expert testimony in its closing arguments, this corrective action did not follow an error of such gravity that the defendant would have been denied fundamental fairness and the continuation of the proceedings would have defeated the ends of justice without the correction. *People v. Nelson*, 235 Ill. 2d 386, 435 (2009) (standard for declaring a mistrial).

¶ 54                                    III. CONCLUSION

¶ 55    In sum, the trial court did not abuse its discretion when it barred Ruiz from testifying after defense counsel promised the jury in his opening statement that they would hear Ruiz's expert testimony when Ruiz' testimony that defendant was not sexually attracted to prepubescent minors was not relevant to the charges defendant faced. Also, the trial court did not abuse its discretion when it denied defendant's motion for a mistrial, even though it reconsidered Ruiz's qualifications midtrial, because defendant had been admonished at the *in limine* hearing and before counsel's opening statement that the admissibility of Ruiz's testimony was predicated on the trial court finding that it such testimony was relevant, and it was not.

¶ 56    Accordingly, the judgment of the circuit court of Lake County is affirmed.

¶ 57    Affirmed.